**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TELLY ROYSTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-1150 |
| | ) | Judge Ambrose |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the reasons below, it is respectfully recommended that Defendants' partial motion to dismiss (Doc. 83) be granted with prejudice in part, granted without prejudice in part, and denied in part. It is recommended that Plaintiff's claims should be disposed of in the following manner.

1. Plaintiff's Eighth Amendment claims with respect to his confinement to a hard cell and a self-contained cell should be dismissed without prejudice;

2. Plaintiff's Eighth Amendment claims with respect to the use of a spit hood and his mere placement on a food loaf diet should be dismissed with prejudice;

3. Plaintiff's Fourteenth Amendment claims with respect to his confinement to a hard cell and a self-contained cell, as well as those relating to the mere imposition of a food loaf diet, should be dismissed with prejudice;

4. All claims against Defendant Beard should be dismissed with prejudice;

5. All of Plaintiff's state tort claims, with the exception of Plaintiff's medical malpractice claim against Defendant Myers, should be dismissed with prejudice; and

6. All claims against Defendants in their official capacities should be dismissed with prejudice.

## II. **REPORT**

Plaintiff Telly Royster ("Plaintiff") is a state prisoner who currently is incarcerated at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-Camp Hill"). Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq*., alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the Constitution of the United States by a host of Defendants. Second. Am. Compl. (Doc. 82) ¶¶ 18-27. Plaintiff also raises claims for relief pursuant to various state tort laws. Id. ¶¶ 20, 23.

Plaintiff filed his initial complaint in the United States District Court for the Middle District of Pennsylvania. (Doc. 1). The certificate of service on his initial complaint, along with the envelope in which it was mailed, indicates that the document was placed in the prison mail system at the State Correctional Institute at Huntingdon, Pennsylvania ("SCI-Huntingdon") on March 24, 2008.[1] Id. at 15-16. Plaintiff was granted leave to proceed *in forma pauperis* ("IFP") on May 13, 2008 (Doc. 10). Plaintiff filed, by leave of the court, his first amended complaint on August 4, 2008 (Docs. 18, 20). Noting that all of the events in the first amended complaint took place at the State Correctional Institute at Fayette, Pennsylvania ("SCI-Fayette"), and concluding

---

[1] Defendants concede that there is no statute of limitations issue in this case. Def.s' Br. in Supp. of Partial Mot. to Dismiss (Doc. 84) at 1 n.1.

that venue was thus proper in the Western District of Pennsylvania, this case was transferred to this Court on August 19, 2009 (Doc. 27). On January 14, 2010, Plaintiff was granted leave to correct the names of various Defendants to this suit. (Docs. 37-38). Defendants filed a partial answer to the amended complaint, along with a partial motion to dismiss, on May 10, 2010 (Docs. 70, 73). Plaintiff subsequently sought leave to file a second amended complaint on June 11, 2010 (Doc. 78), which was granted on August 12, 2010 (Doc. 81).

Plaintiff's second amended complaint was filed on August 12, 2010 (Doc. 82). Defendants filed a partial motion to dismiss (Doc. 83), along with a brief in support thereof (Doc. 84) and a partial answer (Doc. 85) on August 20, 2010. Plaintiff responded to this motion on October 7, 2010 (Docs. 91-92). Defendants' motion to dismiss is ripe for disposition.

### A.  Plaintiff's Factual Allegations and Legal Claims

A summary of Plaintiff's factual allegations relevant to the instant partial motion to dismiss is as follows. Starting on April 4, 2006, Plaintiff was confined to a so-called "hard cell" on multiple occasions, for periods of time stretching from seven to fourteen days. (Doc. 82) ¶ 3. During the times that he was housed in a hard cell, Plaintiff "was not allowed clothes, soap, mail, legal materials, toilet paper, running water or other items. . . ." Id. Furthermore, hard cells are "excessively cold due to the constant cold air blowing out of the vent and the drop of outside temperature at night. . . ." Id. "Officials" at SCI-Fayette allegedly knew of the cold temperatures in these cells, but Plaintiff was refused a blanket. Id. Plaintiff asserts that his placement in a hard cell violated his rights under the Eighth and Fourteenth Amendments. Id. ¶ 18.

Next, Plaintiff alleges that, starting on April 4, 2006, he was denied between 60 and 100 periods for exercise and between 25 and 50 or 60 showers by Defendants.[2]  Id. ¶ 4.  Plaintiff characterizes this as an "'activity / security restriction.'"  Id.  Plaintiff very generally states that "each time [he] was placed on activity restriction it was authorized, approved and implemented by [Defendant] Beard" as well as other Defendants.  Id. ¶ 5.  Plaintiff claims that his placement on "activity restriction" violated his rights under the First, Eighth and Fourteenth Amendments. Id. ¶ 19.

Next, Plaintiff alleges that he was assaulted and beaten to unconsciousness by various Defendants on April 4, 2006.  Id. ¶ 6.  Plaintiff claims that he did not provoke this incident, nor did he resist the attack.  Id.  Plaintiff asserts that this alleged use of excessive force violated his rights under the Eighth Amendment, and constituted the state law tort of assault and battery.  Id. ¶ 20.

Next Plaintiff alleges that he was placed in a co-called "torture chair," to which Defendants refer as a "restraint chair," for approximately seven or eight hours on April 4, 2006. Id. ¶ 7.  Plaintiff asserts that he was not allowed to exercise or use a toilet during this time. Plaintiff also alleges that, on March 16, 2007, he was placed in leg irons for 76 hours, and waist chains and wrist irons for 102 hours.  Id. ¶ 8.  Plaintiff very generally states that both of these incidents were "authorized, approved and implemented by [Defendant] Beard" as well as other Defendants.  Id. ¶ 9.  Plaintiff also claims that he suffered physical injuries, presumably in relation to the events of April 4, 2006, and March 16, 2007, but was denied medical attention by various Defendants.  Id. ¶ 10.  Plaintiff makes the legal claim that his placement in a restraint

---

[2] As Defendants note in their brief, it is difficult to determine whether Plaintiff wrote "(50)" or "(60)" as his allegation of the upper limit of the number of showers that he was deprived.

chair, and the later use of restraints for an extended period of time, constituted violations of his rights under the Eighth and Fourteenth Amendments. Id. ¶¶ 21-22. Defendants' failure to provide medical attention violated the Eighth Amendment, and constituted the tort of "medical malpractice and negligence" under Pennsylvania state law. Id. ¶ 23.

Next, Plaintiff complains of being forced to wear a spit hood every time he left his cell from March of 2007 through January of 2008. Id. ¶ 11. He claims that this was done to humiliate him, and out of sadism and malice. Id. Plaintiff makes the legal claim that the use of a spit hood, which he describes as retaliatory in nature, violated his rights under the First and Eighth Amendments.[3] Id. ¶ 24.

Next, Plaintiff alleges that he was confined to a self-contained cell from March, 2007, through January, 2008. Id. ¶ 12. Plaintiff avers that this cell had its own shower and small, attached exercise yard. Id. Despite the existence of these features, he alleges that, during this period of time, he was denied 100 to 200 periods of exercise, and 75 to 100 opportunities to shower. Id. Plaintiff asserts that his confinement to a self-contained cell, as well as the denial of showers and periods of exercise that he experienced while there, constitute violations of his rights under the First and Eighth Amendments. Id. ¶ 25.

Plaintiff next alleges that, starting on April 6, 2007, he was placed on behavior modified meal, or "food loaf," for about five periods of time, ranging from seven to fourteen days each. Id. ¶ 14. The food loaf often was served to him in a frozen state, forcing him "to skip meals because [he] couldn't eat it." Id. Plaintiff alleges that he was also denied drinking water "or other beverage" while he was being served food loaf. Id. Plaintiff asserts that the mere use of

---

[3] Defendants explicitly state that they do not address Plaintiffs claim of retaliation under the First Amendment with respect to the use of the spit hood in the instant motion, and, instead, limit their arguments only to Plaintiff's Eighth Amendment claim regarding its use. See (Doc. 84) at 5 n.2.

food loaf by Defendants violated his rights under the Eighth and Fourteenth Amendments.  <u>Id.</u> ¶ 26.  Plaintiff makes the additional claim that serving him frozen (and for that reason, inedible) food loaf, as well as denying him water or any other beverage, violated his rights under the Eighth Amendment.  <u>Id.</u> ¶ 27.


**B.  <u>Standard of Review</u>**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  A complaint must be dismissed even if the claim to relief is "conceivable," because a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  <u>See California Pub. Emp.s' Ret. Sys. v. Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004).  Nor must a court accept legal conclusions set forth as factual allegations.  <u>Twombly</u>, 550 U.S. at 555.  Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged."  <u>Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

The United States Court of Appeals for the Third Circuit has held that, when determining whether to dismiss a complaint for failing to state a claim upon which relief can be granted, a district court should apply a two-part test in order to determine whether a pleading's recitation of facts is sufficient. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Iqbal, 129 S.Ct. at 1949). "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1950).

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). In a section 1983 action, a court must liberally construe a *pro se* litigant's pleadings and "'apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.'" Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). "'Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.'" Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint – regardless of whether the plaintiff requests to do so – when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

C. **Analysis**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by* Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Defendants argue that Plaintiff has failed to plead properly any deprivations of the Eighth or Fourteenth Amendments based on 1) his confinement to a hard cell; 2) his confinement to self-contained cell; 3) his placement on a food loaf diet; and 4) being forced to wear a spit hood.[4] Def.s' Br. in Supp. of Partial Mot. to Dismiss (Doc. 84) at 12. Defendants also argue that Plaintiff has failed to allege sufficiently Defendant Beard's personal involvement in any of the alleged bad acts in the second amended complaint, and that all Defendants enjoy sovereign immunity to Plaintiff's state law tort claims. Id. Finally, Defendants argue that the Eleventh Amendment bars Plaintiff's claims against them in their official capacities. Id. These arguments will be addressed *seriatim*.

---

[4] Defendants do not address Plaintiff's assertions that the use of a spit hood and Plaintiff's confinement in a self-contained cell were retaliatory in nature, and thus violations of the First Amendment. (Doc. 82) ¶¶ 24-25. To the contrary, Defendants explicitly exclude that argument, with respect to the use of the spit hood, from the instant motion. (Doc. 84) at 5 n.2. As a result, these claims are not addressed by this Court.

1.  <u>Eighth Amendment Claims</u>

The Eight Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'"  <u>Id.</u> (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).

In order to state an Eighth Amendment conditions of confinement claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind."  <u>Farmer</u>, 511 U.S. at 834.  With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities."  <u>Id</u>, at 834 (internal citation and quotation omitted).  Only "extreme deprivations" are sufficient to make out a conditions of confinement claim.  <u>Hudson v. McMillen</u>, 503 U.S. 1, 8-9 (1992).  A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency."  <u>Helling v. McKinney</u>, 509 U.S. 25, 36 (1993).  Although a combination of confinement conditions – considered alone constitutionally insufficient – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ."[5]  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate

---

[5] The example provided by the Court of a combination of conditions which deprive a single human need, which is particularly relevant to the facts presented by Plaintiff, is "a low cell temperature at night combined with a failure to issue blankets."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 305 (1991).

comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

With respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the officials acted with a sufficiently culpable state of mind. Id. The deliberate indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Id. at 838. Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 845. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

a.    Plaintiff's Confinement to a Hard Cell

Defendants argue that Plaintiff's mere placement in a hard cell, for periods of time ranging from seven to fourteen days, is not sufficient to rise to a violation of the Eighth Amendment.  In support of this they cite Shaeffer v. Schamp, in which this Court found that a Plaintiff's confinement in a hard cell "for ten days without a mattress, soap, toilet paper, running water, [or] legal supplies," did not constitute cruel and unusual punishment.[6]  No. 06-1656, 2008 WL 2553474, at *6 (W.D.Pa. June 25, 2008) (Schwab, J.).

While it is true that the mere placement in a hard cell for a short period of time is not enough to violate the Eighth Amendment's prohibition of cruel and unusual punishment, Defendants neglect to address Plaintiff's assertion that, while he was confined to a hard cell, he was exposed to excessive cold, and was denied a blanket.  (Doc. 82) ¶ 3.  As stated above, this is

---

[6] Defendants attempt to characterize the holding in Schaeffer as extending to facts which include the deprivation of all but one meal a day, as well as the withholding of prescription medications for a ten-day period, in addition to the above-recited conditions of confinement.  (Doc. 84) at 5-6.  Quite simply put, these were not the facts in that case, nor did the holding extend to such a scenario.  Instead, this Court explicitly noted that "the record reflect[ed] that Plaintiff received three meals each day in the hard cell, except on 3 [sic] occasions when he was hiding under his bed or had his light covered. . ." Shaeffer v. Schamp, No. 06-1656, 2008 WL 2553474, at *6 (W.D.Pa. June 25, 2008) (Schwab, J.).  Additionally,

> the record shows that Plaintiff received his prescription anti-convulsant medication . . . at bedtime during the entire time he was in the hard cell except on one occasion when Plaintiff refused his medication. . . . In addition, Plaintiff was on "self-medication" status for two of his prescription medications. . . . In this regard, he was given bubble packs of these medicines to keep in his cell while in the RHU.  Plaintiff subsequently obtained refills for his two self-medication bubble packs . . . . In order to obtain a refill, the inmate must produce an empty pack.  Finally, there is no record evidence that Plaintiff suffered any actual injury as a result of not taking his bubble pack medications for ten days.

Id.  Defendants' characterization of this case is, put in the kindest possible terms, grossly oversimplified.

the archtypical example of a combination of conditions depriving an individual of a single, identifiable human need. Wilson, 501 U.S. at 305 (1991). From this it is clear that Plaintiff has properly pleaded the first element of a conditions of confinement claim with respect to this aspect of his placement in a hard cell.

Plaintiff further alleges that certain "officials" knew of the low temperatures in the hard cell, and that he was denied a blanket. (Doc. 82) ¶ 3. However, Plaintiff does not indicate which of the Defendants, if any, were the unnamed "officials" who were actually aware of the temperature of the cell. Plaintiff also fails to indicate which of the Defendants, if any, denied him a blanket – or whether those individuals who denied him a blanket were the same "officials" who were aware of the cell's low temperature. Without making these factual allegations, Plaintiff cannot, as a matter of law, assert the level of culpability required to state a claim under the Eighth Amendment with respect to his placement in a hard cell. Consequently, this claim should be dismissed. However, as it is not entirely implausible that Plaintiff could allege the information necessary to state a claim, dismissal should be without prejudice.

### b. Plaintiff's Confinement to a Self-Contained Cell

Plaintiff's Eighth Amendment allegations with respect to his placement in a self-contained cell also fail to state a claim upon which relief can be granted. Plaintiff does not allege the various deprivations of property, hygiene materials, and blankets that he associated with his confinement in a hard cell. (Doc. 82) ¶¶ 3, 12. This Court can discern no allegation at all of a denial of an identifiable human need stemming from his placement in a self-contained cell, or the conditions therein. Instead, it appears that Plaintiff argues that the denial of showers and periods of exercise that he allegedly experienced during his time in a self-contained cell is the basis of

his Eighth Amendment claim. These allegations were not addressed by Defendants in their motion to dismiss – who instead focused on Plaintiff's mere confinement in a self-contained cell itself. As such, Plaintiff's claims of an Eighth Amendment violation, stemming only from his mere placement in a self-contained cell, should be dismissed. However, as it would not necessarily be futile for Plaintiff to amend this claim, dismissal should be without prejudice.

### c. Food Loaf

Defendants argue that Plaintiff fails to state an Eighth Amendment claim with respect to his placement on food loaf. (Doc. 84) at 6. It is well settled that prisoners are entitled to a nutritionally adequate diet. Laufgas v. Speziale, 263 Fed.Appx. 192, 198 (3d Cir. 2008), (citing Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980)). However, they have no constitutional right to be served a particular type of meal. Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990). Accordingly, this Court has recognized in the past that providing an inmate with food loaf for seven days "is not a violation of the Eighth Amendment even if it is a punitive measure." Brown v. Sobina, No. 08-128E, 2009 WL 5173717, at *6 (W.D.Pa. Dec. 29, 2009) (McLaughlin, J.). Other courts have found that subjecting inmates to a food loaf diet for as long as fourteen days does not constitute a violation of the Eighth Amendment. Boswell v. Myers, 909 F.2d 1482 (6th Cir. 1990) (Table). Plaintiff fails to state a deprivation of his rights under the Eighth Amendment with respect to his mere placement on food loaf, and this claim should be dismissed.[7] Additionally, as it appears that any amendment of this claim would be futile, dismissal should be with prejudice.

_____

[7] This argument does not address Plaintiff's assertion that the food loaf was often served to him in a frozen, and thus inedible, state, or that he was denied "water or other beverage" while he (continued. . .)

d.  Spit Hood

Next, Defendants argue that Plaintiff's placement in a spit hood whenever he left his cell from March, 2007, to January, 2008, did not constitute cruel and unusual punishment.  Indeed, other courts have held that the mere use of a spit hood does not violate the Eighth Amendment. See Norman v. Hubert No. 07-387-JVP-DLD, 2009 WL 981100, at *2 (M.D.La. Mar. 18, 2009). Examining Plaintiff's claims regarding the spit hood, as they are related in the second amended complaint, it is apparent that he fails to allege, or even imply, any deprivation of an identifiable human need, the use of force, or exposure to unsafe conditions, that could be plausibly construed as a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Consequently, Plaintiff's claim regarding the use of a spit hood, to the extent that he bases it on the Eighth Amendment, should be dismissed.  Additionally, as it appears that any attempt by Plaintiff to amend this claim would be futile, dismissal should be with prejudice.


2.  Fourteenth Amendment Due Process

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."  U.S. Const. amend. XIV § 1.  Plaintiff invokes the Due Process Clause with respect to his confinement in a hard cell, his confinement in a self-contained cell, and his placement on a food loaf diet.  However, Plaintiff does not distinguish in his second amended complaint between substantive and procedural due process,

_____

was on a food loaf diet.  (Doc. 82) ¶ 15.  Instead, Defendants clearly limit the scope of their argument to address the constitutionality of "[t]he mere act of placing Plaintiff on 'food loaf'[.]" (Doc. 84) at 12.  Accordingly, this Court's recommendation of dismissal does not extend to those claims.

and Defendants brief only the former. In the interest of completeness, this Court will address Plaintiff's relevant claims under both legal theories.[8]

### a. Substantive Due Process

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels, 474 U.S. at 331). Official conduct violates substantive due process if it "shocks the conscience . . . ." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) (internal citations and quotes omitted). This standard "encompasses only the most egregious official conduct." Id. (internal citations and quotes omitted).

Defendants argue, without providing support, "that if the above acts do not rise to the level of cruel and unusual punishment it necessarily follows that such acts would not shock the conscience of a reasonable observer either." (Doc. 84) at 7. However, even assuming such an argument is correct, it is premature. Prior to engaging in a substantive due process analysis of these claims, it is first necessary to determine whether Plaintiff's claims actually require a substantive due process analysis.

_____

[8] Despite the fact that Defendants do not raise any arguments with respect to procedural due process in their motion to dismiss, it is still proper for this Court to address the issue *sua sponte*. 28 U.S.C.§ 1915 (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Thus, a court must dismiss, *sua sponte*, a complaint that lacks arguable merit in fact or law. Stackhouse v. Crocker, 266 Fed.Appx. 189, 190 (3d Cir. 2008) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under this section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999); see also Banks v. Mozingo, No. 08-004, 2009 WL 497572, at *6 (W.D.Pa. Feb. 26, 2009) (Cercone, J.).

The Supreme Court of the United States has noted that it has "'always been reluctant to expand the concept of substantive due process[.]'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Consequently, it has established the "more-specific provision rule." Lewis, 523 U.S. at 843-44. Under this rule "'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259-60 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

As it is clear that Plaintiff challenges his confinement in specialized cells and the use of a spit hood as unconstitutional conditions of confinement, and as impermissible retaliatory acts for his engagement in constitutionally protected activities, it is clear that his claims find "more specific provisions" under the Eighth and First Amendments, respectively. Consequently, to the extent that Plaintiff argues that these alleged occurrences violate substantive due process, his arguments fail as a matter of law, and these claims should be dismissed with prejudice.

b. Procedural Due Process

It is possible that, instead of a substantive due process argument, Plaintiff may be attempting to assert that he was denied procedural due process under the Fourteenth Amendment with respect to the above-mentioned claims. In order to state a claim of a violation of the procedural aspect of the Due Process Clause, Plaintiff must first set out facts that demonstrate he had a protected liberty interest impaired by the Defendants' actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Once a court determines that the interest

asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. <u>Morrissey</u>, 408 U.S. at 481.

As the Supreme Court of the United States has recognized on multiple occasions, "prisoners do not shed all constitutional rights at the prison gate[.]" <u>Sandin v. Conner</u>, 515 U.S. 472, 485 (1995) (<u>citing</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555 (1984)). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." <u>Sandin</u>, 515 U.S. at 485 (internal quotations and citations omitted). One of these limitations, in the context of state prison regulations, is that a liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484 (internal citations and quotations omitted).

Under this standard, to the extent that Plaintiff alleges a violation of procedural due process with respect to his temporary confinement in specialized cells, his claims must fail as a matter of law. Plaintiff fails to allege any facts that, if proven true, would support the conclusion that he suffered any sort of atypical or significant hardship associated with his placement in a hard cell or a self-contained cell. His own factual assertions indicate that he was confined to a hard cell for periods of time not in excess of fourteen days. (Doc. 82) ¶ 3. Additionally, his placement in a self-contained cell consisted of a single period of time that lasted from March of 2007 to January of 2008. <u>Id.</u> ¶ 12. Given that it has been held that administrative confinement for as long as fifteen months is insufficient to implicate a liberty interest, <u>see</u> <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-07 (3d Cir. 1997), it is clear that Plaintiff's mere confinement in a hard cell

and a self-contained cell for such relatively short periods period of time would be insufficient to do so as well.

Plaintiff's allegations regarding the use of food loaf also fail to support a claim on which relief can be granted under this legal theory. The Supreme Court itself has written disapprovingly of the finding of a liberty interest in not being placed on a food loaf diet, describing it as "run[ning] counter to the view expressed in several of [the Court's] cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." See Sandin, 515 U.S. 472, 482-83 (citing, with disapproval, United States v. Michigan, 680 F.Supp. 270, 277 (W.D.Mich. 1988)). Other courts have spoken much more directly, stating that the mere placement on a food loaf diet does not constitute an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]'" and thus does not implicate a due process liberty interest. Griffis v. Grundy, 47 Fed.Appx. 327, 328 (6th Cir. 2002) (quoting Sandin, 515 U.S. at 484); see also Banks v. Morris, 115 Fed.Appx. 704, 705 (5th Cir. 2004); see also Johnson v. Gummerson, 198 F.3d 233 (2d Cir. 1999). This Court finds this precedent to be strongly compelling. Thus, it is recommended that, to this extent that Plaintiff alleges a violation of due process merely for being placed on a food loaf diet, his claims should be dismissed. Additionally, as it appears that any attempt by Plaintiff to amend this claim under this theory would be futile, dismissal should be with prejudice.

3. Claims Against Defendant Beard

It is well established that no liability exists under section 1983 solely by means of vicarious liability or *respondeat superior*. Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990). Instead, in order for section 1983 liability to attach, a plaintiff must show that a defendant

was personally involved in the deprivation of his or her federal rights.  See Evancho v. Fisher,

423 F.3d 347, 353 (3d Cir. 2005).  In cases involving a supervisory or reviewing defendant,

personal involvement may be shown through "'allegations of personal direction or of actual

knowledge and acquiescence.'" Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207

(3d Cir.1988)).

Additionally, a state official in a supervisory role has no affirmative constitutional duty to

supervise or discipline subordinates so as to prevent the violation of constitutional rights.  See

Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990).  However, in cases where a

supervising official knowingly permits a continuing custom or policy that results in harm to a

plaintiff, section 1983 liability may attach.  See Colburn v. Upper Darby Twp., 838 F.2d 663,

673 (3d Cir. 1988) (*overruled in part on other grounds by* Leatherman v. Tarrant County

Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).  At a minimum, such

liability attaches "'only where there are both (1) contemporaneous knowledge of the offending

incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which

the supervisor's inaction could be found to have communicated a message of approval to the

offending subordinate.'" Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126,

133 (3d Cir. 1986)).

Plaintiff fails to allege facts that, if true, could lead to the conclusion that Defendant

Beard had any personal involvement in, or contemporaneous knowledge of, Plaintiff's placement

on "activity / security restriction" in 2006, or confinement in restraints in 2006 and 2007.  See

(Doc. 82) ¶¶ 4-9.  Indeed, Plaintiff's only mention of Defendant Beard in the second amended

complaint is to state that these alleged acts were "authorized, approved and implemented" by

him and a host of other Defendants.  Id. ¶¶ 4, 9.  However, these statements are merely

conclusory repetitions of legal standards.  See Chinchello, 805 F.2d at 133 ("supervising public officials may not in any way authorize, encourage, or approve constitutional torts ").  Without making allegations of facts to support these conclusions, Plaintiff fails to state a claim that Defendant Beard has violated his rights under the Constitution of the United States, and his claims against Defendant Beard should be dismissed.

Defendant Beard's alleged personal involvement in the acts of which Plaintiff complains was, in part, the subject of Defendants' first motion to dismiss (Doc. 70), and the issue was briefed by Defendants when that first motion was pending.  See (Doc. 71) at 10-11.  Instead of responding to that motion, Plaintiff sought, and was granted, leave to file a second amended complaint.  (Doc. 78).  As Plaintiff was clearly aware of the standard for properly pleading personal involvement by Defendant Beard from the contents of Defendants' prior motion to dismiss, amended his complaint in an attempt to incorporate those standards, and failed to allege sufficient facts to state a claim, it is clear that further leave to amend would be futile and inequitable.  Consequently, Plaintiff's claims against Defendant Beard should be dismissed with prejudice.

### 4.  Plaintiff's State Tort Claims

The doctrine of sovereign immunity bars tort claims against the Commonwealth, its officials, and employees acting within the scope of their duties.[9]  1 Pa.C.S.A. § 2310.  The

---

[9] Conduct of an employee is within the scope of employment only if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is calculated, at least in part, by a purpose to serve the employer.  Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000), (citing Restatement (Second) Agency § 228).  Additionally, if force is intentionally used, "the use of force is not unexpectable" by the employer.  Restatement (Second) Agency § 228(1)(d).

Commonwealth has statutorily waived sovereign immunity, but only "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" in specific, enumerated exceptions. 42 Pa.C.S.A. § 8522(a). There are nine instances in which sovereign immunity has been waived by statute – these are negligent acts pertaining to: 1) vehicle liability; 2) medical professional liability; 3) care, custody or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines. 42 Pa.C.S.A. § 8522(b)(1)-(9). These nine exceptions must be "strictly construed and narrowly interpreted." Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Cmwlth. 2003). "Commonwealth employee[s] [are] protected by sovereign immunity from the imposition of liability for intentional tort claims." La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992). Additionally, it is well established that any claims falling under the "medical professional liability" exception to sovereign immunity applies only to the acts of health care employees – and not to individuals who are not medical professionals. McCool v. Dep't of Corr., 984 A.2d 565, 570 (Pa. Cmwlth. 2009) (interpreting 42 Pa.C.S.A. § 8522(b)(2)).

In the case at bar, it is not disputed that Defendants' alleged bad acts were performed within the scope of their duties as employees of the Commonwealth. Indeed, it is apparent from the factual allegations in the complaint that Defendants were acting within the scope of their employment as prison officials when they committed their alleged wrongful acts. It is also clear that none of Plaintiff's state tort law claims, with the exception of the medical malpractice claim

against Defendant Myers, fall within the above nine exceptions.[10]  Furthermore, it appears that

no opportunity to amend would change this fact.  Accordingly, Plaintiff's state law claims

against Defendants, with the exception of the claim of medical malpractice against Defendant

Myers, should be dismissed with prejudice.


     5.  Plaintiff's Official Capacity Claims

Plaintiff clearly states in his second amended complaint that he is suing Defendants in the

individual and official capacities.  (Doc. 82) ¶ 2.  Defendants assert that Plaintiff's claims against

them in their "official capacities" are the functional equivalent of claims against the

Commonwealth of Pennsylvania and, hence, are barred.    Indeed, a lawsuit against the

Commonwealth of Pennsylvania would be barred by the Eleventh Amendment.  Quern v. Jordan,

440 U.S. 332, 340-341 (1979).  When individual Commonwealth employees are sued in their

official capacity, the action is considered to be against the Commonwealth itself.  See Kentucky

v. Graham, 473 U.S. 159, 166 (1985).  The immunities available to the individual Defendants

sued in their official capacity are the same as those possessed by the Commonwealth and,

accordingly, Plaintiff's "official capacity" section 1983 claims are barred and those claims

should be dismissed.  Id. at 167.


### III. CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully

recommended that Moving Defendants' motion to dismiss (Doc. 83) be granted with prejudice in

---

[10] Defendants appear to concede that 42 Pa.C.S.A. § 8522(b)(2) waives Defendant Myers's
immunity from suit with respect to Plaintiff's claim of medical malpractice.  (Doc. 84) at 10.

part, granted without prejudice in part to Plaintiff's ability to file an amended complaint with respect to certain claims, and denied in part.  It is recommended that Plaintiff's claims should be disposed of in the following manner.

1. Plaintiff's Eighth Amendment claims with respect to his confinement to a hard cell and a self-contained cell should be dismissed without prejudice;

2. Plaintiff's Eighth Amendment claims with respect to the use of a spit hood and his mere placement on a food loaf diet should be dismissed with prejudice;

3. Plaintiff's Fourteenth Amendment claims with respect to his confinement to a hard cell and a self-contained cell, as well as those relating to the mere imposition of a food loaf diet, should be dismissed with prejudice;

4. All claims against Defendant Beard should be dismissed with prejudice;

5. All of Plaintiff's state tort claims, with the exception of Plaintiff's medical malpractice claim against Defendant Myers, should be dismissed with prejudice; and

6. All claims against Defendants in their official capacities should be dismissed with prejudice.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 14, 2011.  Failure to file timely objections may constitute a waiver of any appellate rights.

February 28, 2011

s/Cathy Bissoon
Cathy Bissoon
United States Magistrate Judge

**cc:**
TELLY ROYSTER
EL2245
SCI Camp Hill
PO Box 200
Camp Hill, PA 17001