# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TELLY ROYSTER, | ) | |
| | ) | Civil Action No. 09 - 1150 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| BEARD, *et al.*, | ) | |
| | ) | ECF No. 174 |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Defendant P.A. Meyer's Motion for Summary Judgment (ECF No. 174). Upon review of the pleadings and documents in this case, along with the response in opposition to the motion, the Court finds no genuine issue as to any material fact with regard to Plaintiff's claim against P.A. Meyer. Accordingly, summary judgment shall be granted in his favor.

## I. PROCEDURAL HISTORY

Telly Royster ("Plaintiff") was a state prisoner incarcerated at the State Correctional Institution at Fayette ("SCI-Fayette") at the time the events giving rise to this action occurred. He initiated this case in the Middle District of Pennsylvania on April 8, 2008, and he was thereafter granted leave to proceed *in forma pauperis*.[1] (ECF Nos. 1-10.) Plaintiff filed, by

---

[1] Plaintiff's initial complaint named sixty-one Defendants who were employees of the Pennsylvania Department of Corrections at institutions in which he had been incarcerated. These included SCI-Fayette, SCI-Camp Hill and SCI-Pittsburgh. Because Plaintiff was proceeding *in forma pauperis*, the complaint was evaluated by the District Court for the Middle District of Pennsylvania under the screening provisions of 28 U.S.C. § 1915. The Court found that Plaintiff's complaint did not comply with the joinder provisions of Rule 20 of the Federal Rules of Civil Procedure,

leave of court, his first amended complaint on August 4, 2008. (ECF No. 20.) In it, Plaintiff named as Defendants fourteen prison officials at SCI-Fayette, as well as Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections. Id. Noting that all of the events in the first amended complaint took place at SCI-Fayette, and concluding that venue was thus proper in the Western District of Pennsylvania, this case was transferred to this Court on August 19, 2009. (ECF Nos. 27-28.) On January 14, 2010, Plaintiff was granted leave to correct the names of various Defendants to this suit. (ECF No. 37.) The amended complaint did not contain substantive revisions, but eliminated Defendants not named in the first amended complaint. (ECF No. 38.) Defendants filed a partial answer to the amended complaint, along with a partial motion to dismiss, on May 10, 2010. (ECF Nos. 70-71, 73.) Plaintiff subsequently sought leave to file a second amended complaint, which was granted on August 12, 2010. (ECF Nos. 78-79, 81.) In the same Order, Defendants' partial motion to dismiss was denied without prejudice. (ECF No. 81.)

Plaintiff's second amended complaint was filed on August 12, 2010. (ECF No. 82.) Plaintiff named twenty-seven Defendants and alleged that he was assaulted, seriously injured and was denied medical care while at SCI-Fayette. Id. Defendants filed a partial motion to dismiss, along with a partial answer on August 20, 2010. (ECF Nos. 83-85.) By order dated March 21, 2011, Defendants' partial motion to dismiss was granted in part and denied in part. (ECF No. 105.) Thereafter, all Defendants, with the exception of Defendant P.A. Meyers, filed an answer to the second amended complaint. (ECF No. 106.)

---

and could not, therefore, be screened. In an Order dated May 12, 2008, the Court permitted him to amend his complaint to correct the deficiencies.

Defendant P.A. Meyers filed a motion to dismiss on May 2, 2011, but the motion was later dismissed as moot when Plaintiff was granted leave to file a third amended complaint. (ECF Nos. 107-08, 122.) His third amended complaint was filed on November 4, 2011. (ECF No. 124.) All Defendants, with the exception of P.A. Meyer, filed an answer to the third amended complaint on November 10, 2011, and P.A. Meyer filed a motion to dismiss on November 17, 2011. (ECF Nos. 125-26.) By Order dated May 3, 2012, the Court denied the motion with respect to Plaintiff's Eighth Amendment claim. (ECF No. 157.) Thereafter, P.A. Meyer answered Plaintiff's third amended complaint and filed the instant Motion for Summary Judgment on August 15, 2012. (ECF Nos. 158, 174.) Plaintiff responded to the motion on August 31, 2012. (ECF No. 183.)

## II.    ALLEGATIONS AND FACTUAL BACKGROUND

Plaintiff claims that on April 4, 2006, he was assaulted and beaten to unconsciousness by various named Defendants. *See*, *generally*, Third Amended Complaint, ECF No. 124. He states that he did not provoke this incident, nor did he resist the attack. Id. According to Plaintiff's medical records, he was seen by nursing a total of four times that day. (Def.'s Exh. 4, Plaintiff's Progress Notes, ECF No. 177-4 at pp.1-2.) At 5:15 p.m., he indicated "I'm cool," and at 8:00 p.m., he stated that he wanted his medications, which were given to him. (Def.'s Exh. 4 at p.2.) On one occasion, he complained of pain and was instructed to sign up for sick call. (Def.'s Exh. 4 at p.1.)

Plaintiff was seen by P.A. Meyer on the morning of April 5, 2006. (Def.'s Exh. 4 at p.2.) P.A. Meyer noted that Plaintiff complained of knee pain, but upon examination, noted that there was no swelling or deformity and that Plaintiff was able to ambulate well. (Def.'s Exh. 4 at p.2) He diagnosed Plaintiff with a knee sprain and ordered a cool compress with stretching. (Def.'s

Exh. 4 at p.2.)  Plaintiff, however, maintains that he was denied medical attention for the injuries

he sustained as a result of the assault the previous day, including loss of consciousness, excessive

bruising, bleeding and swelling.  He alleges that P.A. Meyer stated, "That's what happens when

you assault an officer.  I'm going to let you suffer so you learn your lesson."  (ECF No. 124 at

p.2.)

On April 9, 2006, nursing received a call that Plaintiff was out of his inhaler.  (Def.'s

Exh. 4 at p.3.)  Nursing went to Plaintiff's cell to exchange his inhaler for a new one but Plaintiff

stated that the old one was with his property and he did not want anyone going through his stuff

to get it.  (Def.'s Exh. 4 at p.3.)  The nurse would not leave the new inhaler without exchanging

it for the old one, and she offered to let Plaintiff use the new one at that time but Plaintiff told her

that he did not need it because he was not having any problems breathing.  (Def.'s Exh. 4 at p.3.)

Medical records indicate that he did not appear to be in any distress at that time.  (Def.'s Exh. 4

at p.4.)

On April 11, 2006, Plaintiff submitted Grievance #149066 claiming that he was assaulted

on April 4, 2006.  (Def.'s Exh. 6, ECF No. 177-6 at pp.3-5.)  As part of the grievance, he

claimed that P.A. Meyer cut him off at sick call and said he would let him suffer for a couple of

weeks before he treated him.  (Def.'s Exh. 6 at p.4.)  Plaintiff appealed this grievance to each

level and the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") found no

evidence that there was an assault in April 2006 but rather that Plaintiff had provoked an incident

when he punched an officer in the face after which he was cuffed and shackled but also

examined by medical with no injuries noted.  (Def.'s Exh. 6 at pp.1-15.)

On April 14, 2006, Plaintiff was seen by P.A. Cowden, who ordered ointment for his

scalp.  (Def.'s Exh. 4 at p.4); (Def's Exh. 5 at p.13.)  Also on this day, Plaintiff submitted

Grievance #149570 claiming that P.A. Meyer cut him off at sick call on April 5, 2006 and that

P.A. Meyer was going to let him suffer because he assaulted an officer. (Def.'s Exh. 7, ECF No.

177-7 at p.3.) Plaintiff also claimed that Superintendent Wilson made inappropriate comments.

(Def's Exh. 7 at p.3.) The grievance was rejected because it raised more than one event.

Plaintiff appealed but the grievance was rejected at each level. (Def.'s Exh. 7 at pp.1-6.)

On April 24, 2006, Plaintiff submitted Grievance #150431 complaining about P.A.

Meyer and claiming that he refused to treat him. (Def's Exh. 8, ECF No. 177-8 at p.3.) Plaintiff

appealed to each level but the SOIGA found no evidence that Plaintiff was denied medical

treatment. (Def.'s Exh. 8 at pp.1-6.)

On April 28, 2006, P.A. Meyer was scheduled to see Plaintiff for sick call because

Plaintiff was complaining of injuries from cuffs and officers. (Def.'s Exh. 4 at p.4.) However,

when P.A. Meyer approached his cell, Plaintiff waived him on and looked away. (Def.'s Exh. 4

at p.4.) According to P.A. Meyer, Plaintiff did not appear to be in any distress. (Def.'s Exh. 4 at

p.4.)

On May 1, 2006, Plaintiff was seen in sick call by P.A. Meyer at which time Plaintiff was

diagnosed with allergies. (Def.'s Exh. 4 at p.5.) P.A. Meyer ordered medications. (Def.'s Exh.

4 at p.5); (Def.'s Exh. 5 at p.13.)

On May 12, 2006, Plaintiff was again seen in sick call by P.A. Meyer. (Def.'s Exh. 4 at

p.5.) More medication was ordered for his allergies and he was instructed to increase his fluids.

(Def.'s Exh. 4 at p.5); (Def's Exh. 5 at p.12.)

On May 19, 2006, Plaintiff submitted Grievance #153298 complaining about copayments

for sick call visits on April 5, 2006 and April 14, 2006. (Def.'s Exh. 9 at p.3.) His grievance

appeal to SOIGA was dismissed as untimely. (Def.'s Exh. 9 at 1.) Plaintiff also submitted

Grievance #155422 after he was charged with a copayment for his sick call visit on May 12, 2006. (Def.'s Exh. 10, ECF No. 177-10 at p.3.) It was determined that the copayment was appropriate because he was seen and examined on that date and medication was ordered. (Def.'s Exh. 10 at pp.1-6.)

On May 26, 2006, Plaintiff was seen in sick call by P.A. Meyer and again diagnosed with allergies. (Def.'s Exh. 4 at p.5.) P.A. Meyer ordered more medications. (Def.'s Exh. 4 at p.5.)

Plaintiff was seen for sick call by P.A. Meyer on June 12, 20, 23 and 26, 2006. (Def.'s Exh. 4 at p.6.) Each time he complained of either allergies or his asthma and each time P.A. Meyer ordered medication. (Def.'s Exh. 4 at p.6); (Def.'s Exh. 5 at pp.9, 11.)

Plaintiff was a no show for sick call on June 30, 2006, but he was seen by P.A. Meyer on July 3 and 7, 2006. (Def.'s Exh. 4 at p.17.). During each visit, P.A. Meyer ordered Plaintiff medications. (Def.'s Exh. 4 at p.17); (Def.'s Exh. 5 at p.9.)

Plaintiff was a no show for sick call on July 14 and 17, 2006, but was seen by P.A. Meyer on July 21, 2006, at which time P.A. Meyer examined Plaintiff and ordered Zantac and lotion for his scalp. (Def.'s Exh. 4 at p.17); (Def.'s Exh. 5 at p.8.)

According to Plaintiff's medical records, he was either seen or scheduled and refused to show up for sick call dozens of times thereafter. (Def.'s Exh. 4 at pp. 18, 7-16.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

## IV. DISCUSSION

Plaintiff's claim is that P.A. Meyer refused to provide him with medical care in violation of the Eighth Amendment after he was allegedly assaulted by certain defendants on April 4, 2006, stating "This is what happens when you assault an officer. I'm going to let you suffer so you can learn your lesson. See me in a couple of weeks and I'll consider treating you."

Defendant argues that the absence of expert testimony regarding causation precludes Plaintiff's claim and also that Plaintiff has failed to demonstrate a genuine issue of material fact that P.A. Meyer was deliberately indifferent to his medical needs. The Court need not reach the issue concerning expert testimony because Plaintiff has failed to make a showing sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial; namely, that his injuries were sufficiently serious so as to satisfy the objective component of his deliberate indifference claim.

### A. Deliberate indifference to medical needs standard.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-05 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim, an inmate must allege (1) a serious medical need and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 104; Natale v. Camden Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit Court of Appeals has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal

quotations and citations omitted); *see also* Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  *See* Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety).  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D. N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), *aff'd*, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napolean, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  *See* Rouse, 182 F.3d at 197.  The court also has held that

needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266; *see also* Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napolean, 897 F.2d 103 (3d Cir. 1990).

**B. Plaintiff has failed to demonstrate the existence of a serious medical need for purposes of the Eighth Amendment.**

Plaintiff maintains that the injuries he suffered as a result of the alleged assault on April 4, 2006, included loss of consciousness, excessive bruising, bleeding and swelling. According to his medical records, Plaintiff complained of knee pain and he was seen by P.A. Meyer the following day. No swelling or deformity was noted and Plaintiff was diagnosed with a sprained knee, given a compress and instructed to stretch. In response to summary judgment, Plaintiff contends that he also suffered additional injuries including severe back pain; nerve damage to his wrist, hands and legs; and increased migraines, and that P.A. Meyer deliberately falsified his medical records so as to not reflect his true injuries.

Notwithstanding P.A. Meyer's assessment of Plaintiff on April 5, 2006, the record demonstrates that Plaintiff was seen by nurses on four occasions after the alleged assault on April 4, 2006, and notably, the nurses' entries indicate that Plaintiff had no apparent injuries except for a bleeding finger and a possible scratch on his leg. Plaintiff does not take issue with the nurses' assessments; only with the assessment by P.A. Meyer the following day. Furthermore, his medical records indicate that he was seen on April 9, 2006, and did not

complain of any injuries at that time; only that he needed a new inhaler. In fact, with the exception of his sick call request on April 28, 2006 when he complained of injuries from cuffs but refused to be seen by P.A. Meyer, Plaintiff's medical records show that he never once complained or requested medical care for his alleged injuries after April 5, 2006, and it is not clear whether his complaint on April 28, 2006, was related to the April 4, 2006 incident.

Plaintiff's medical records essentially belie his alleged injuries. Nevertheless, even assuming the truth of such assertions, courts have found injuries such as the ones Plaintiff alleges to not meet the "serious medical need" requirement of the Eighth Amendment. *See* Brandner v. First Correctional, 167 F. App'x 328, 329-30 (3d Cir. 2006) (failing to treat pain and swelling in knee do not rise to the level of deliberate indifference to inmate's serious medical needs); Brown v. Rodarmel, No. 3:CV-10-293, 2013 U.S. Dist. LEXIS 43106, at *34 (M.D. Pa. Mar. 27, 2013) (minor stab wounds, loosened tooth and head, shoulder and back pain do not constitute anything more than temporary discomfort and do not amount to a serious medical need); Vilchis v. City of Bakersfield, No. 1:10-cv-00893, 2012 U.S. Dist. LEXIS 4447, at *31-32 (E.D. Ca. Jan. 13, 2012) (loss of consciousness, abrasions and contusions to the head and face, with some bleeding do not amount to a "serious medical need" for purposes of the Eighth Amendment); Dallio v. Hebert, 678 F. Supp. 2d 35, 60 (N.D. N.Y. 2009) (black eyes, bruising, red spots, kick marks, and lacerations did not constitute a serious medical need); Rodriguez v. Mercado, No. 00 CIV. 8588 JSRFM, 2002 U.S. Dist. LEXIS 16057, at * 22-25 (S.D. N.Y. Aug. 28, 2002) (finding that bruises to plaintiff's head, back and wrists, accompanied by back pain and migraines did not constitute a medical condition that was sufficiently serious for purposes of the Eighth Amendment); Jesionowski v. Beck, 937 F. Supp. 95, 102-03 (D. Mass. 1996) (forehead laceration causing profuse bleeding and requiring sutures was not a serious medical need).

Indeed, this Court previously cautioned Plaintiff that his burden of proving his Eighth Amendment claim was high. *See* ECF No. 145. Plaintiff's injuries, while perhaps mildly uncomfortable, are not the types of injuries that are sufficiently serious enough for purposes of the Eighth Amendment. They did not require immediate medical attention or any major treatment. Moreover, Plaintiff has also failed to demonstrate how P.A. Meyer's alleged failure to attend to his medical needs on April 5, 2006, resulted in any lasting or permanent injury or the unnecessary and wanton infliction of pain. Plaintiff does not even come forward with the medical treatment that he believed he needed following the incident. In short, he has simply failed to set forth any evidence from which a reasonable jury could find that the objective component of his deliberate indifference claim has been satisfied. This is so even assuming P.A. Meyer did in fact tell Plaintiff that he was not going to treat him in order to teach him a lesson. The record is absent of a genuine issue of material fact regarding the seriousness of Plaintiff's injuries. Thus, Defendant P.A. Meyer is entitled to summary judgment.[2]

### C. Plaintiff's medical negligence claim fails for failure to file a Certificate of Merit as required under Pennsylvania law.

Although not addressed by Defendant in his brief, Plaintiff appears to assert a medical negligence claim against P.A. Meyer in his third amended complaint. In this regard, Pennsylvania law requires that a Certificate of Merit ("COM") accompany a claim for

---

[2] Moreover, although it appears to be immaterial to Plaintiff's claim against P.A. Meyer, his medical records indicate that the medical staff was attentive to his medical needs both immediately following the April 4, 2006 incident and throughout the year. He was seen for sick call on numerous occasions and medication was ordered for his ailments. Any disagreement with the treatment he received does not give rise to a constitutional violation. *See* White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990); Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

professional liability brought against certain designated licensed professionals.[3]   This

requirement is provided for in Pennsylvania Rule of Civil Procedure 1042.3, which states that the

COM must be filed within sixty days following any action where it is alleged that "a licensed

professional deviated from the acceptable professional standard."  Pa. R. Civ. P. 1042.3.  The

COM must contain a written statement from "an appropriate licensed professional" declaring

whether the professional liability claim is brought directly (the defendant's conduct fell below

the standard of care, bringing about the harm), indirectly (the conduct of persons under the

direction of the defendant fell below the standard of care, bringing about the harm), or that no

expert testimony will be necessary to prosecute the claim against that defendant.  Pa. R. Civ. P.

1042.3 (a)(1)-(3).  It must also be signed by the party or by the attorney representing that party.

Pa. R. Civ. P. 1042.3(a).

It has been over a year-and-a-half since Plaintiff filed his third amended complaint and he

has neither filed a COM nor requested an extension of time to do so.  Nevertheless, there is

absolutely nothing in the record which would support a medical negligence cause of action.

Specifically, in order prevail on a medical malpractice/negligence claim under Pennsylvania law,

a plaintiff has the burden of establishing each of the following elements: (1) that there was a duty

owed by the physician; (2) that there was a breach of that duty; (3) that the breach proximately

caused the harm experienced by the plaintiff; and (4) that the plaintiff's damages directly

resulted from the harm.  *See* Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061,

1070 (Pa. 2006) (quoting Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997)); Mitzelfelt v.

Kamrin, 584 A.2d 888, 892 (Pa. 1990).  Plaintiff has failed to put forth any evidence from which

---

[3] "License professional" includes health care providers, accountants, architects, chiropractors, dentists, engineers or land surveyors, nurses, optometrists, pharmacists, physical therapists, psychologists, veterinarians and lawyers.  Pa R. Civ. P. 1042.1(b).

a reasonable jury could find a breach of duty owed to him by P.A. Meyer or that any harm resulted from any breach.  As such, P.A. Meyer is entitled to summary judgment on this claim as well.  As there are no surviving claims asserted against him, he will be terminated from this action.  An appropriate order will follow.

      Dated: September 6, 2013

/s/ Lisa Pupo Lenihan

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  Counsel of Record